**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CORDELL HUBBARD, *pro se*, | ) CASE NO. 1:21-CV-00129 |
| | ) |
| Petitioner, | ) JUDGE PATRICIA A. GAUGHAN |
| | ) |
| v. | ) MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) |
| KEITH J. FOLEY, Warden, | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Respondent. | ) |

Cordell Hubbard ("Hubbard" or "Petitioner"), represented by counsel, has filed a second petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in the Cuyahoga County Court of Common Pleas Case No. CR-03-435700-A.[1] (R. 1.) The petition is before the magistrate judge pursuant to Local Rule 72.2. Currently before the court is Respondent's Motion to Transfer the petition to the Sixth Circuit Court of Appeals as a second or successive petition. (R. 5). Petitioner, despite being represented by counsel, has not filed a response. The undersigned recommends that the Motion to Transfer be GRANTED and the case transferred to the Sixth Circuit Court of Appeals pursuant to 28 U.S.C. §2244(b) as a second or successive habeas petition seeking relief under 28 U.S.C. § 2254.

---

[1] Previously, on March 3, 2006, Petitioner, through counsel, had filed a habeas petition with this Court. The case was captioned *Hubbard v. Bradshaw*, Case No. 1:06-cv-00481, and that petition also challenged Hubbard's conviction in the Cuyahoga County Court of Common Pleas Case No. CR-03-435700-A. That petition was denied. (R. 25 & 27).

## I.  Summary of Facts and Procedural History

### A.  History Up to the First Habeas Petition[2]

The petitioner Cordell Hubbard ("Hubbard") has filed, through counsel, an amended petition for a writ of habeas corpus arising out of his 2003 convictions for complicity to commit aggravated murder, murder, complicity to commit murder, kidnapping, complicity to commit kidnapping, felonious assault, and complicity to commit felonious assault, with firearm specifications, in the Cuyahoga County, Ohio, Court of Common Pleas. (Doc. 11.) Hubbard raises four grounds for relief in his amended petition:

> 1. Due Process was violated when the state trial court refused to grant Petitioner's request for severance and permitted the introduction into evidence of incriminating statements by a co-defendant against the Petitioner in the absence of the opportunity for cross-examination.
>
> 2. Due Process was violated when Petitioner's identification was based on a flawed and unreliable photo array and the testimony of a witness who was clearly intoxicated and under the influence of drugs and another witness who previously stated that she could not possibly identify anyone at the murder scene.
>
> 3. Due Process was violated by the admission of testimony in Petitioner's trial regarding inculpatory statements allegedly made to its author by a non-testifying co-defendant and when the prosecution presented a belated identification witness whose testimony was unavailable for challenge during the voire [sic] dire which was requested and granted prior to trial.
>
> 4. Due Process was violated when the State Court misapplied the federal standard necessary to determine whether the guilty verdicts returned against the Petitioner were supported by insufficient evidence.

(Doc. 11, at 8-9.)

### [] FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual background:

> Appellant [Cordell Hubbard] was indicted and tried with two codefendants, Nichole Hubbard, appellant's sister, and Ru-el Sailor. At the conclusion of trial, appellant was found guilty of complicity to commit aggravated murder

---

[2]  Those portions of the procedural history predating the prior Report and Recommendation of July 31, 2007 in case (hereafter "R&R") are cited directly from said R&R.

(Count 2), murder (Count 3), complicity to commit murder (Count 4), kidnapping (Counts 5 and 7), complicity to commit kidnapping (Counts 6 and 8), felonious assault (Counts 9 and 10) and complicity to commit felonious assault (Counts 11 and 12), all with one-year firearm specifications. Prior to sentencing, the trial court merged counts 2, 3 and 4, counts 5 and 6, counts 7 and 8, counts 9 and 11, and counts 10 and 12. The trial court then sentenced appellant to a total of 23 years to life in prison . . .

The facts relative to this case are as follows. On the evening of November 17, 2002, Nichole Hubbard, Clark Williams ("Williams"), Maria Whitlow and Omar Clark ("Clark") were "hanging out" at the home of Ellen Taylor. Later in the evening, Nichole, Williams, Clark, and Whitlow left to procure drugs. Nichole gave Williams twenty dollars to purchase a "wet" cigarette*, with the understanding that he was to pay her back in full. Whitlow did not participate in the drug buy and was dropped off at her house before the purchase was made. After smoking the wet cigarette, Williams repaid Nichole only ten dollars, arguing that she shared in the drugs and should bear some of the cost. Nichole became enraged and accused Williams and Clark of cheating or "playing" her. She called her brother, appellant, on her cell phone; she then got in her car and left. Williams and Clark proceeded down Englewood Road toward the home of Ellen Taylor.

    * A cigarette dipped in a solution containing PCP.

A short time later, appellant and Ru-el Sailor arrived on Englewood Road. Appellant and Williams argued about the money Nichole claimed Williams owed to her. Meanwhile, Clark confronted Sailor, who was the driver of the car. Williams noticed that appellant used his cell phone during the altercation; he then noticed that Sailor was holding a gun on him. Williams began to run when shots rang out. In the melee, Clark was shot eleven times and killed. Williams suffered a slight gunshot wound but survived the attack.

Detective James Metzer of the Cleveland Police Department was assigned to investigate the case. He spoke with Williams and with Nichole Hubbard, who made a statement to police with an attorney present. Within one month of the shooting, Williams was able to identify appellant from a photo array as the man he had argued with on the night in question; he later identified Ru-el Sailor as the "shooter." Nichole Hubbard stated that she had indeed argued with Williams and had tried to contact her brother, but was only able to reach his voice mail and did not speak to him on the night in question. She also told the detective that Williams threatened her with a gun before she left the scene; however, Williams denied having a gun and no evidence that he was armed was presented.

During the course of his investigation, Det. Metzer learned that Nichole Hubbard actually made seven calls to her brother's cellular phone between 11:57 p.m. and 12:47 a.m. on the night in question, and none of those calls was referred to voice mail. This information was confirmed by cellular phone records obtained from Verizon Wireless and Sprint Communications and introduced into evidence.

Appellant was indicted and tried with Ru-el Sailor and Nichole Hubbard; of the defendants, only Ru-el Sailor testified. Williams and other witnesses to the shooting took the stand. Nichole Hubbard's statement to the police was also admitted as evidence. As to the appellant, the jury returned guilty verdicts on all counts except aggravated murder. At his sentencing hearing, appellant stated that he was with a man named Will on the night of the shooting and that Sailor was not there. However, at a hearing on Sailor's motion for a new trial, appellant testified that he shot Clark in self-defense (a defense never asserted at trial) while accompanied by a man named William Sizemore and that Sailor had nothing to do with the shooting.

(Doc. 14, RX 10, at 2-5; *State v. Hubbard*, No. 83384, 2004 WL 1944810, at \*1-\*2 (Ohio Ct. App. Sept. 2, 2004).)

On Jan. 20, 2004, Hubbard filed a notice of appeal, raising thirteen assignments of error, as follows:

1. The trial court erred when it denied the appellant's motion for severance from his sister and co-defendant Nichole Hubbard which was a clear *Bruton* violation.

2. The trial court erred when it denied the appellant's motion to suppress the identification testimony of Clark Williams.

3. The trial court erred when it allowed the state to present testimony of Ellen Taylor regarding statements allegedly made to her by codefendant Nichole Hubbard implicating appellant and the admission of this testimony was violative of his right to confrontation and right to due process.

4. Appellant was denied due process when the trial court denied the appellant's motion for mistrial when the state had presented belated identification witness testimony during the middle of trial although the appellant had timely filed a motion to suppress identification testimony and a hearing was had on that motion.

5. The trial court erred when it denied the appellant's motion to suppress the identification testimony of state witness Tennita Johnson.

4

6. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of complicity to commit aggravated murder.

7. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of murder.

8. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of complicity to commit murder.

9. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of kidnapping in counts 5 and 7 of the indictment.

10. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of complicity to commit kidnapping in counts 6 and 18 of the indictment.

11. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charges of felonious assault in counts 9 and 10 of the indictment.

12. The trial court erred when it denied appellant's motion for judgment of acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure due to state's failure to present sufficient evidence of guilt for the charge of complicity to commit felonious assault in counts 11 and 12 of the indictment.

13. The verdicts finding the appellant guilty are against the manifest weight of the evidence and are contrary to law.

(Doc. 14, RX 7.) On Sept. 2, 2004, the court of appeals affirmed his conviction. (Doc. 14, RX 10; *State v. Hubbard*, No. 83384, 2004 WL 1944810, at \*1-\*2 (Ohio Ct. App. Sept. 2, 2004).)

Hubbard filed a timely appeal with the Ohio Supreme Court on Nov. 29, 2004, setting forth thirteen propositions of law:

5

1. When there is a *Bruton* violation, an accused is entitled to a severance from a co-defendant.

2. An eyewitness who was clearly intoxicated and under the influence of drugs should not be permitted to make a positive identification of the accused when the photo-array was likewise flawed and unreliable.

3. Where a witness is allowed to testify regarding statements allegedly made to her by a co-defendant implicating the accused, the admission of such testimony violates his right of Confrontation and the rule established in *Crawford*.

4. Due process is denied when the prosecution presents a belated identification witness where the accused was unable to challenge that testimony before trial, and had no notice of this identification witness was given to the defense.

5. Due process is denied when an identification witness who previously stated that she could not possibly identify anyone, and is later presented with a suggestive photo-array and makes a positive identification of the accused.

6. Where there is legally insufficient evidence to support a conviction for complicity to commit aggravated murder, then the trial court is mandated to grant an accused a verdict of not guilty.

7. Where there is legally insufficient evidence to support a conviction for murder, then a trial court is mandated to grant an accused a verdict of not guilty.

8. Where there is legally insufficient evidence to support a conviction for complicity to commit murder, then a trial court is mandated to grant an accused a verdict of not guilty.

9. Where there is a legally insufficient evidence to support convictions for kidnapping, then a trial court is mandated to grant an accused a verdict of not guilty.

10. Where there is legally insufficient evidence to support convictions for complicity to commit kidnapping, then a trial court is mandated to grant an accused a verdict of not guilty.

11. Where there is legally insufficient evidence to support convictions of Felonious Assault, then a trial court is mandated to grant an accused a

6

verdict of not guilty.

12. Where there is legally insufficient evidence to support convictions for complicity to Commit Felonious Assault, then a trial court is mandated to grant an accused a verdict of not guilty.

13. Where the verdicts finding the appellant guilty are against the manifest weight of the evidence and are contrary to law, the accused is entitled to a judgment of acquittal.

(Doc. 14, RX 15.) On March 2, 2005, the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question. (Doc. 14, RX 16; *State v. Hubbard*, 105 Ohio St.3d 1452, 823 N.E.2d 457 (2005).)

(R. 20, PageID# 943-948, *Hubbard v. Bradshaw*, Case No. 1:06-cv-481).

On July 31, 2007, the Magistrate Judge recommended denying Hubbard's petition. (R. 20, Case No. 1:06-cv-481). The District Court accepted the report and recommendation, denied the habeas petition, and found no basis upon which to issue a certificate of appealability. *Hubbard v. Bradshaw*, No. 1:06 CV 481, 2007 WL 4180666, at *1 (N.D. Ohio Nov. 19, 2007).

On December 20, 2007, Hubbard, through counsel, filed a notice of appeal in the United States Court of Appeals for the Sixth Circuit. (R. 27, Case No. 1:06-cv-481). On August 8, 2008, the Sixth Circuit Court of Appeals denied Petitioner's application for a certificate of appealability. (R. 29, Case No. 1:06-cv-481; Exh. 23, Case No. 08-3071).

**B.  Additional State Court Proceedings After the First Habeas Petition**

**1. Motion for Resentencing**

On June 15, 2010, Hubbard, *pro se*, filed a motion for sentencing with the trial court. (R. 5-1, PageID# 430; Exh. 24). The trial court denied the motion on August 27, 2010. (R. 5-1, PageID# 439; Exh. 26). On December 13, 2010, the trial court denied Hubbard's motion to vacate or set aside judgment. (R. 5-1, PageID# 443; Exh. 28).

On March 4, 2011, Hubbard filed a motion for leave to file a delayed appeal with the

state appellate court. (R. 5-1, PageID# 459; Exh. 30). The state appellate court denied Hubbard's motion for leave to file a delayed appeal and dismissed the appeal on April 8, 2011. (R. 5-1, PageID# 469-470; Exhs. 31 & 32).

On November 8, 2012, Hubbard, *pro se*, filed a notice of appeal and a motion for leave to file a delayed appeal with the Ohio Supreme Court. (R. 5-1, PageID# 471-473; Exhs. 33 & 34). The Ohio Supreme Court denied Hubbard's motion for leave to file a delayed appeal and dismissed the appeal on January 23, 2013. (R. 5-1, PageID# 482; Exh. 35).

### 2. Motion to Correct the Judgment Entry

Meanwhile, on April 24, 2012, Hubbard, *pro se*, filed a "Motion to Correct the Judgment Entry/Correction of the Record, and Vacate Void Judgment of the Conviction & Sentence Pursuant to Crim.R. 32 and §2505.02 of the Ohio Revised Code." (R. 5-1, PageID# 483-494; Exh. 36). The trial court denied the motion on May 16, 2012. (R. 5-1, PageID# 508; Exh. 38).

On June 25, 2012, Hubbard, *pro se*, filed a notice of appeal with the state appellate court. (R. 5-1, PageID# 509; Exh. 39). The court of appeals dismissed the appeal *sua sponte*, on June 29, 2012, finding that Hubbard had failed to file a timely notice of appeal. (R. 5-1, PageID# 526; Exh. 40).

Hubbard, *pro se*, filed a notice of appeal as well as a motion for leave to file a delayed appeal on July 20, 2012. (R. 5-1, PageID# 527-563; Exhs. 41 & 42). On August 8, 2012, the state appellate court denied the motion for leave to file a delayed appeal and dismissed the appeal. (R. 5-1, PageID# 564-565; Exhs. 43 & 44). Respondent represents that Hubbard failed to file an appeal with the Supreme Court of Ohio. (R. 5, PageID# 57).

### C. Motion for Authorization to File a Second or Successive Petition

On November 6, 2013, Hubbard filed a motion for authorization to file a second or

successive federal habeas petition. (R. 5-1, PageID# 837; Exh. 80). On May 21, 2014, the Sixth

Circuit Court of Appeals denied Hubbard's motion for authorization. (Exhibit 81, Case No. 13-

4396.) The Court of Appeals stated:

> To obtain this court's permission to file a second or successive § 2254 habeas
> petition, Hubbard must make a prima facie showing that: 1) there is newly
> discovered evidence which, if proven and viewed in light of the evidence as a
> whole, sufficiently establishes that no reasonable factfinder would have found
> him guilty; or 2) a new rule of constitutional law applies to his case which the
> Supreme Court has made retroactive to cases on collateral review. *See* 28 U.S.C.
> § 2244(b); *In re Green*, 144 F.3d 384, 388 (6th Cir. 1998).

(R. 5-1, PageID# 936; Exh. 81). The court ultimately concluded that Hubbard failed to state a

*prima facie* case, as the jury's verdicts were not new, nor did his claim of ineffective assistance

of counsel amount to newly discovered evidence demonstrative of innocence. *Id*.

**D. Additional State Court Filings**

**1. Ohio App. R. 26(B) Delayed Application to Reopen Appeal**

On November 16, 2015, Hubbard, through counsel, filed an application for reopening

pursuant to Ohio Appellate Rule 26(B) with the state appellate court. (R. 5-1, PageID# 579; Exh.

48). The state appellate court denied the application for reopening on March 9, 2016, finding that

Hubbard failed to establish good cause for filing an untimely application that was over ten years

late. (R. 5-1, PageID# 595-604; Exh. 49).

On April 22, 2016, Hubbard, through counsel, filed a notice of appeal with the Ohio

Supreme Court. (R. 5-1, PageID# 605; Exh. 50). In his memorandum in support of jurisdiction,

Hubbard raised the following propositions of law:

> 1.    A defendant is denied effective assistance of appellate counsel if such
>       counsel fails to raise meritorious issues that were not in need of outside
>       the record development to fully address the assignment of error.
>
> 2.    It is a violation of the state and federal due process clauses to allow the

state to amend the indictment post-verdict as it enables the defendant to be
convicted of facts different than those presented to the grand jury.

3.      The failure of trial counsel to object to the prosecutions [sic] argument
        supporting a conviction based on facts and law not considered or returned
        by the grand jury or request the preparation of the grand jury transcript
        constitutes ineffective assistance of counsel.

(R. 5-1, PageID# 608; Exh. 51). On June 29, 2016, the Supreme Court of Ohio declined to accept

jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (R. 5-1, PageID# 637; Exh. 53).

**2. Motion for New Trial**

On May 5, 2019, Hubbard, through counsel, filed a "Motion for Leave to File Motion for

New Trial" with the trial court. (R. 5-1, PageID# 639; Exh. 54). The trial court denied the motion

on July 11, 2019. (R. 5-1, PageID# 718; Exh. 57). Hubbard, through counsel, filed a notice of

appeal with the state appellate court. (R. 5-1, PageID# 719; Exh. 58). In his appellate brief,

Hubbard raised the following assignment of error:

1.      The trial court abused its discretion in denying Defendant's motion for
        leave to file motion for new trial.

(R. 5-1, PageID# 733; Exh. 59).

The state appellate court overruled Hubbard's assignment of error on April 30, 2020, and

affirmed the judgment of the trial court. *State v. Hubbard*, 2020-Ohio-2726 (Ohio Ct. App. Apr.

30, 2020). The court noted that Hubbard purported to rely on the following "newly discovered

evidence" in support of his motion for a new trial: "a portion of the transcript from [William]

Sizemore's CIU [conviction integrity unit] interview; (2) Sizemore's March 2018 affidavit; (3) a

portion of the transcript from [Clark] Williams's CIU interview; (4) Williams's March 2018

affidavit; (5) the joint motion to vacate Sailor's conviction; (6) an affidavit executed by appellant

in March 2019; and (7) an affidavit from appellant's trial counsel." *Id*. at ¶24. The state appellate

court discussed the "new evidence" as follows:

## B. Newly Discovered Evidence

{¶ 31} In his motion for leave, appellant argued that he was entitled to a new trial based on the newly discovered evidence of William Sizemore and Clark Williams.

### 1. William Sizemore

{¶ 32} In support of his motion for leave, appellant submitted an affidavit executed by Sizemore in March 2018. Therein, Sizemore averred that he was friends with appellant in 2002 and was present at the time of the November 2002 shooting. Sizemore tried to intervene in the dispute between appellant and Omar, and told appellant not to shoot Omar because he is like family to him. During the argument, Sizemore noticed that Omar "had a gun and was holding it down by his side[.]" Despite Sizemore's attempts to intervene in the argument, appellant shot and killed Omar.

{¶ 33} Appellant also submitted a portion of the transcript from Sizemore's CIU interview. During the interview, Sizemore stated that "[appellant] and [Omar] were arguing and [appellant] shot him." Sizemore asserted that he did not tell anybody that Sailor was not involved in the shooting because he wanted to protect his own life and the life of others. He was also abusing drugs and dealing with the loss of his child's mother at the time.

### 2. Clark Williams

{¶ 34} In support of his motion for leave, appellant submitted an affidavit executed by Williams on March 20, 2018. Therein, Williams averred that he was present at the time of the shooting. Appellant got in Williams's face and was yelling at him about a situation involving his sister. The male with appellant was holding a gun. Williams sensed the controversy was escalating, so he turned and ran. As he was running, Williams heard a series of gunshots and his backside was grazed by a bullet.

{¶ 35} Williams averred that he circled back to the street where the shooting took place and observed Omar's cousin (Lionel) take a gun out of Omar's hand after Omar had been shot. Lionel struck Williams in the head when he returned to the area.

{¶ 36} Williams was unable to identify the other male who was with appellant at the time of the shooting. The only reason he identified Sailor in court was because his female friend at the time, Taylor, was present in court with Williams and indicated to him that Rue-El Sailor was the person with appellant on the night of the murder. Williams believed what Taylor told him was true because at the time, she was best friends with appellant's sister. Williams did not come forward earlier

11

because he did not want to disparage Taylor and Omar.

{¶ 37} Appellant also submitted a portion of the transcript from Williams's CIU interview. During the interview, Williams asserted that they were all high on PCP on the night of the shooting. The person with appellant had a gun. Williams did not know whether appellant had a gun. Williams shoved appellant and ran away. When he was running away, his backside was grazed by a bullet. He did not know who shot him in the backside. Williams circled back around the block and saw a body in the street. Omar's cousin Lionel grabbed the gun from Omar's hand on the ground. Lionel hit Williams in the head with the gun he retrieved from Omar.

{¶ 38} Williams did not have a gun. Williams did not know whether appellant had a gun, and he never saw appellant pull out a gun.

{¶ 39} A prosecuting attorney asked Williams why he told prosecutors at the time of the shooting that Omar had his gun out and had Williams's back during the controversy. Williams asserted that he was afraid, but explained that Omar did not use the gun: "[w]hen [Omar] pulled it out. He just flashed it[.]" Williams asserted, "I was trying to, [Omar is] my friend, and I'm going to defend my friend. I'm not going to tell [investigators] well Omar pulled a gun out on [appellant] and then they shot him. But that ain't what happened, [Omar] just had a gun, protection. I just left it out [when he previously spoke with investigators]."

{¶ 40} Williams did not come forward earlier to talk about the shooting. Investigators attempted to talk to Williams on approximately six occasions the previous year when he was serving six months, but he refused to speak with them. Williams explained that he subsequently agreed to talk to CIU prosecutors because he wanted justice for his friend Omar.

### C. Unavoidably Prevented From Discovery

{¶ 41} As noted above, appellant was required to seek leave of the trial court to file his motion for a new trial because appellant filed his motion more than 120 days after the jury returned its verdict. In order to obtain leave, appellant was required to demonstrate by clear and convincing evidence that he was unavoidably prevented from discovering the new evidence of Sizemore and Williams.

{¶ 42} In his motion for leave, appellant asserted,

> Defendant, Cordell Hubbard, was unavoidably prevented from discovering critical information regarding the State's eyewitnesses, Clark Williams, and eyewitness William Sizemore within 120 days of the verdict. Although [*appellant*] *himself always knew Omar Clark had a gun and had behaved in a threatening manner*, he did not know who "Will" was and he had no reason to suspect that William Sizemore would ever come forward or that

12

> Clark Williams would ever admit Omar Clark had a gun and he had
> misidentified Sailor.

(Emphasis added.) Motion for leave at p. 5.

{¶ 43} Regarding Sizemore, appellant asserted in his motion for leave that he was delayed in discovering and obtaining Sizemore's statements because he "did not know who 'Will' was and [appellant] had no reason to suspect that William Sizemore would ever come forward[.]" Appellant claimed that Sizemore's identity was not known to him until "after trial," and that Sizemore refused to discuss the case "for years." Appellant failed to identity what, if any, efforts were made to obtain Sizemore's statement between November 2002 and March 2018.

{¶ 44} Regarding Williams, appellant asserted in his motion for leave that he was delayed in discovering and obtaining Williams's statement because he had no reason to suspect that "Clark Williams would ever admit Omar Clark had a gun[.]" Appellant emphasized that although Williams testified at the original trial, he did not disclose that he saw Omar "flashing" a gun during the altercation with appellant.

{¶ 45} After reviewing the record, we are unable to conclude that the trial court's judgment denying appellant's motion for leave was unreasonable, arbitrary, or unconscionable. As an initial matter, we note that appellant relies heavily on the affidavits and CIU interviews of Sizemore and Williams as corroboration of his self-defense claim, which he did not raise at trial. Although the March 2018 affidavits of Sizemore and Williams are "new," the contents of the affidavits are not new as they relate to appellant.

{¶ 46} Appellant contends that Sizemore's and Williams's account of the shooting corroborate his self-defense claim. Appellant had prior knowledge, however, of the facts giving rise to his self-defense claim, as evidenced by his testimony during the September 2003 hearing on Sailor's motion for a new trial. Furthermore, as noted above, appellant conceded in his motion for leave that he "always knew" of the facts giving rise to his self-defense claim — that Omar had a gun and was acting in a "threatening manner" when appellant shot him.

{¶ 47} Nevertheless, the record reflects that appellant failed to demonstrate, by clear and convincing evidence, that he was unavoidably prevented from discovering the "new" evidence based upon which he claims he is entitled to a new trial. The record reflects that appellant had knowledge of the existence of the ground supporting his motion — his self-defense claim — as early as 2003.

{¶ 48} During the July 2003 sentencing hearing, appellant, who did not testify at trial, told the trial court that he was with a man named "Will" on the night of the shooting and that Sailor was not present. Appellant submitted an affidavit in

support of Sailor's June 2003 motion for a new trial, in which appellant stated that he shot and killed Omar in self-defense. During the September 2003 hearing on Sailor's motion for a new trial, appellant testified that he shot Omar in self-defense, he was with William Sizemore on the night of the shooting, and Sailor had nothing to do with the incident. "[A]t the [September 4, 2003] hearing on [Sailor's] motion for a new trial, Cordell [Hubbard] testified that he shot the victim in self-defense and that the victim was armed." *State v. Sailor*, 8th Dist. Cuyahoga No. 83552, 2004-Ohio-5207, ¶ 45.

{¶ 49} Accordingly, the record clearly reflects that appellant had knowledge of the facts giving rise to his self-defense claim as early as 2003.

{¶ 50} To the extent that appellant argues he is entitled to a new trial because he had no knowledge of the existence of eyewitnesses Sizemore and Williams and could not have learned of their existence in the exercise of reasonable diligence, this argument is entirely unsupported by the record.

{¶ 51} Appellant was aware of Sizemore's identity as an eyewitness within 120 days of the verdict. In his March 2019 affidavit, appellant averred that he did not know until after trial that the man that was with him at the time of the shooting was William Sizemore. As noted above, appellant advised the trial court during his July 2003 sentencing hearing that he was with a man named "Will" on the night of the shooting and that Sailor was not present. Subsequently, in September 2003, appellant testified that he was with William Sizemore at the time of the shooting. Assuming that appellant did not know Sizemore's identity at the time of trial, he was clearly aware of Sizemore's identity and the fact that Sizemore was an eyewitness to the shooting in September 2003.

{¶ 52} The purportedly new evidence pertaining to Sizemore was discoverable as early as September 2003 when appellant was aware of his identity. According to Sizemore's affidavit, after the 2002 shooting, he feared for his life and left the state of Ohio "for many years." If appellant or his defense team had investigated earlier, Sizemore could have been located and his statements about the incident could have been documented.

{¶ 53} Although Sizemore claims that he left the state of Ohio for "many years" there is no explanation as to where he was in hiding, when he returned to Ohio, or why appellant was prevented from discovering Sizemore's account of the shooting between September 2003, when Sizemore's identity was known to appellant, and March 2018, when Sizemore executed his affidavit — a gap of more than 14 years. *See Hill* at ¶ 33.

{¶ 54} Appellant was also aware of Williams's identity within 120 days of the verdict. As noted above, Williams testified at the original trial in 2003.

14

{¶ 55} Accordingly, the record reflects that within the 120-day timeframe, appellant knew of (1) Sizemore's existence as an eyewitness, (2) Williams's existence as an eyewitness, and (3) the facts giving rise to his self-defense claim.

{¶ 56} "The phrases 'unavoidably prevented' and 'clear and convincing proof' do not allow one to claim that evidence was undiscoverable simply because affidavits were not obtained sooner." *State v. Fortson*, 8th Dist. Cuyahoga No. 82545, 2003-Ohio-5387, ¶ 11. A defendant cannot claim that evidence was undiscoverable merely because the defendant or his defense counsel made no effort to obtain the evidence sooner. *State v. Jackson*, 8th Dist. Cuyahoga No. 108241, 2019-Ohio-4893, ¶ 20, citing *State v. Cashin*, 10th Dist. Franklin No. 17AP-338, 2017-Ohio-9289.

> It is the duty of the criminal defendant and his [or her] trial counsel to make a serious effort, on their own, to discover potential, favorable evidence. *State v. Williams*, 8th Dist. Cuyahoga No. 99136, 2013-Ohio-1905, ¶ 9. Claims that evidence was undiscoverable simply because the defense did not take the necessary steps earlier to obtain the evidence do not satisfy the requisite standard [under Crim.R. 33]. *State v. Anderson*, 10th Dist. Franklin No. 12AP-133, 2012-Ohio-4733, ¶ 14; *see also State v. Golden*, 10th Dist. Franklin No. 09AP-1004, 2010-Ohio-4438, ¶ 15.

*Collins*, 8th Dist. Cuyahoga No. 108486, 2020-Ohio-918, at ¶ 45.

{¶ 57} In the instant matter, despite having knowledge of the existence of Sizemore and Williams as eyewitnesses to the shooting, appellant simply chose not to locate or contact these eyewitnesses, or failed to exercise reasonable diligence in attempting to do so. Appellant failed to clearly and convincingly demonstrate that he was unavoidably prevented from timely discovering Sizemore's and Williams's statements.

*Hubbard*, 2020-Ohio-2726 at ¶¶ 30-57.

On May 11, 2020, Hubbard, through counsel, filed an application for reconsideration. (R. 5-1, PageID# 779; Exh. 62). The state appellate court denied the motion on May 21, 2020. (R. 5-1, PageID# 787; Exh. 64).

On July 1, 2020, Hubbard, through counsel, filed a notice of appeal in the Ohio Supreme Court. (R. 5-1, PageID# 788; Exh. 65). In his memorandum in support of jurisdiction, Hubbard set forth the following proposition of law:

15

1.      Defendant is denied his right to a fair trial in violation of the Sixth
        Amendment and the Due Process Clauses of the Fifth and Fourteenth
        Amendments where the trial court abuses its discretion in declining to
        grant leave to file a Motion for New Trial despite Defendant's reasonable
        diligence in presenting newly discovered evidence.

(R. 5-1, PageID# 792; Exh. 66).

On September 15, 2020, the Supreme Court of Ohio declined to accept jurisdiction of the

appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). *State v. Hubbard*, 2020-Ohio-4388, 159 Ohio St. 3d

1520, 152 N.E.3d 324 (Ohio 2020).

**E. Second and Current Federal Habeas Petition**

Hubbard, through counsel, filed this instant petition on January 16, 2021. (R. 1). In his

petition, Hubbard raised the following ground for relief:

**GROUND ONE**: In light of the new evidence, Defendant is entitled to a new trial
as his trial was not fair as guaranteed by the Fifth Amendment to the U.S.
Constitution.

*Supporting Facts*: The State of Ohio acknowledged that the theory of the case
cannot be upheld. The co-defendant, argued by the State of Ohio at trial to have
been the shooter, is now known to not have been present at all.

(R. 1, PageID# 6).

## II. Analysis

Respondent's motion to transfer Hubbard's Petition asserts that the present petition is a

second and successive petition that must first be considered by the Sixth Circuit Court of

Appeals. (R. 5, PageID # 59). Therefore, Respondent contends that the petition must be

transferred to the Sixth Circuit pursuant to 28 U.S.C. §2244(b). *Id.*

Second or successive habeas petitions like Petitioner's are governed by 28 U.S.C. §

2244(b). The relevant provisions state:

16

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--

      (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

      (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

      (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3)(A) **Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.**

      (B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

      (C) **The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection**.

      (D) The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion.

      (E) The grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari.

(4) A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section.

28 U.S.C. § 2244(b) (emphasis added). The Respondent identifies § 2244(b)(3)(A) as relevant to the motion. (R. 5, PageID# 59).

As expressly stated in the statute, in order to file a "second or successive" habeas petition, the prisoner must first move for an order from the relevant U.S. Court of Appeals authorizing the district court to consider the application. *Magwood v. Patterson*, 561 U.S. 320, 330-331 (2010); *Tyler v. Cain*, 533 U.S. 656, 660 n.2 (2001) (citing 28 U.S.C. § 2244(b)(3)(A)); *Cress v. Palmer*, 484 F.3d 844, 852 (6th Cir. 2007); *In re Siggers*, 132 F.3d 333, 335 (6th Cir. 1997). The Sixth Circuit has held that, if a petition filed in a district court is considered a "second" petition, the district court should transfer the petition to the Sixth Circuit Court of Appeals for its consideration. *See, e.g.*, *In re Sims*, 111 F.3d 45, 46-47 (6th Cir. 1997) (*per curiam*). In *Askew v. Bradshaw*, 636 Fed. App'x 342, 345 n. 1 (2016), the Sixth Circuit reaffirmed the Sixth Circuit *Sims'*s rule and subsequent jurisprudence requiring a district court in this Circuit to *transfer*, rather than dismiss, a "second or successive" petition to the Court of Appeals.[3]

While the petition is rather vague as to the basis of this second petition (R. 1, PageID# 6), his more recent state court filings assert that he has newly discovered evidence that he could not

---

[3] The Supreme Court has determined that, where there is a new judgment intervening between two habeas petitions, "an application challenging the resulting new judgment is not 'second or successive' at all." *Magwood*, 561 U.S. at 341-342. This applies to "all new judgments, whether they capture new sentences or new convictions or merely reinstate one or the other." *King*, 807 F.3d at 157. For example, federal courts have found that a subsequent habeas petition is not a "second or successive" petition where it raises a claim that originates at resentencing, and which could not have been addressed in the earlier petition. *Lang v. United States*, 474 F.3d 348, 351-353 (6th Cir. 2007), *cert. denied*, 552 U.S. 1083 (2007). Here, however, Hubbard is challenging the *same* conviction and *same* sentence as in his prior petition. He has *not* been resentenced, and, therefore, there is no "new judgment" that would allow him to file without authorization from the court of appeals.

have discovered earlier through reasonable diligence, as recited above in the procedural history.

Thus, his filing implicates 28 U.S.C. sections 2244(b)(2)(B)(i) & (ii), in that his present petition

arguably contends: (i) the factual predicate for the claim could not have been discovered

previously through the exercise of due diligence, and (ii) the facts underlying the claim would be

sufficient to establish by clear and convincing evidence that, but for constitutional error, no

reasonable factfinder would have found him guilty. "The second prong is commonly referred to

as the 'actual innocence' standard. Before a second or successive petitioner can proceed on their

claims in the district court, they must obtain authorization from the court of appeals by making a

prima facie showing that they satisfy § 2244(b)(2)(B)'s requirements." *Keith v. Wainwright*, No.

1:18 CV 634, 2021 WL 4348259, at *2 (N.D. Ohio Sept. 24, 2021) (Solomon, J.) (citing *In re

Wogenstahl*, 902 F.3d 621, 628 (6th Cir. 2018)).

In *In re Wogenstahl*, the Sixth Circuit noted that even though the petitioner had not

previously raised the same claims in a prior petition and even though his new claims relied on

recently discovered facts, Wogenstahl's petition was nevertheless "both second-in-time and

second or successive, and he must therefore pass through the [appellate court's] gatekeeping

mechanism of § 2244(b)(2)(B)." *Id*. "Once back in the district court [after the court of appeals

performs its gatekeeping function], the petitioner 'must actually show that the claim satisfies the

standard' to avoid dismissal." *Keith*, 2021 WL 4348259 at *2 (quoting *Tyler v. Cain*, 533 U.S.

656, 661 n.3 (2001)). The Sixth Circuit recently endorsed a plain reading of the statute—that it is

the court of appeals' gatekeeping role to determine whether an application for permission to file

a second or successive habeas corpus petition makes a *prima facie* showing that the application

satisfies the requirements of § 2244(b)(2)(B)(i) & (ii)—by considering whether two witness

statements identified by the petitioner could not have been discovered previously through the

exercise of due diligence under the first prong, § 2244(b)(2)(B)(i), and then considering whether

the facts alleged, if proven, would establish by clear and convincing evidence that no reasonable

factfinder would have found him guilty. *In re Jackson*, 12 F.4th 604, 609-610 (6th Cir. 2021).[4]

Therefore, it is recommended that this matter be transferred to the court of appeals so that

it may decide whether a *prima facie* showing has been made that satisfies the requirements of 28

U.S.C. § 2244(b)(2)(B)(i) & (ii).

### III. Conclusion

The undersigned recommends that the Motion to Transfer (R. 5) be GRANTED, and

Hubbard's habeas corpus petition be TRANSFERRED to the Sixth Circuit Court of Appeals,

pursuant to 28 U.S.C. § 2244(b), as a second or successive petition seeking relief under section

2254.

s/ David A. Ruiz
United States Magistrate Judge

Date: January 5, 2022

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).**

---

[4] The concurring opinion asserts that certain claims based on new facts, which would have been "unripe" at the time of the earlier petition, would render the petition neither second nor successive, and asserts the *In re Wogenstahl* decision was wrongly decided. *In re Jackson,* 12 F.4th at 612-16.